UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

BUFFALO NIAGARA CHAUFFEURED
SERVICES, INC. d/b/a BUFFALO LIMOUSINE

Plaintiff,

v.                                                    **DECISION AND ORDER**
                                                      12-CV-681S

JAMES LEEHAN d/b/a MAGIC MIST
LIMOUSINE SERVICES, BUFFALO AIRPORT
LIMOUSINE, NIAGARA FALLS SHUTTLE and
NIAGARA WINE TOURS and ACES
LIMOUSINE SERVICE, INC.

Defendants.

## I. INTRODUCTION

Presently before this Court is the motion of Plaintiff Buffalo Niagara Chauffeured

Services, Inc., seeking to enforce the terms of a Stipulation of Dismissal against Defendant

Aces Limousine Service, Inc.

## II. BACKGROUND

Plaintiff commenced this action alleging unfair competition and false advertising

under the Lanham Act and New York State law in July 2012.  Initially commenced against

only Defendant "Magic Mist Limousine Services, d/b/a Buffalo Airport Limousine Service

("Buffalo Airport Limousine"), d/b/a Niagara Falls Shuttle and d/b/a Niagara Wine Tours,"

Plaintiff alleged that this singular Defendant "attempted to trade on the goodwill associated

with Plaintiff's trademark, and has caused likely and actual consumer confusion, by

repeatedly and prominently identifying itself as 'Buffalo Limousine' on the internet and in

promotional literature." (Compl. ¶ 2, Docket No. 1.)  In an Amended Complaint filed in

1

November 2012, Plaintiff named "James Leehan, d/b/a/ Magic Mist Limousine, Buffalo Airport Limousine Service . . ., Niagara Falls Shuttle and Niagara Wine Tours" and Ace Limousine Service, Inc. as Defendants. (Docket No. 18.)  Plaintiff alleged that Defendant Aces was "now operating Buffalo Airport Limousine and continues to promote the business using the same infringing trademarks used by Leehan." (Am. Compl. ¶ 20.)

The parties settled the matter in January 2013, at which time Plaintiff entered into separate stipulations of dismissal with Leehan and Aces. (Docket Nos. 28-29.)  Pursuant to his agreement with Plaintiff, Leehan agreed to cease all use of any designation that was confusingly similar to Plaintiff's "Buffalo Limousine" trademark and immediately remove the "buffaloairportlimo" website.  (Docket No. 29 ¶¶ 1-2.)  Leehan was expressly permitted, however, to direct visitors from that website to the "magicmistlimo" domain for thirty days. (Id. ¶ 2.)

The separate stipulation of dismissal between Plaintiff and Aces ("the Stipulation") provided the following:

1.   Aces and any affiliated companies will immediately and permanently cease all business contact with defendant James Leehan, or any person or entity affiliated with Mr. Leehan, regarding the promotion or operation of a limousine service within the State of New York.

2.   Aces will cease all use of any designation that is confusingly similar to plaintiff's BUFFALO LIMOUSINE trademark, including, without limitation, the designations 'Buffalo Limousine,' 'Buffalo Limousine Services,' 'Buffalo Airport Limousine,' 'Buffalo Wedding Limousine' and 'Buffalo Corporate Limousine.'

[3.]  This Court will maintain ongoing jurisdiction of any dispute regarding compliance with the terms of this Stipulation of Dismissal with Prejudice.

(Docket No. 28.)

2

Following this Court's 'so-ordering' the entry of both stipulations (Docket No. 30), Aces' counsel emailed Plaintiff's counsel, stating: "I have the signed stipulation by Le[e]han d/b/a Magic Mist and your client, Buffalo Limousine.  My client would like to buy his name, 'Magic Mist' and his websi[t]e, but not his vehicles.  This would violate our stipulation with your client.  Would your client consent to us proceeding in light of the settlement?" (Reply Decl. of Charles Von Simson, Esq., Ex. A, Docket No. 35; see Sur-Reply Affirm. of Paul T. Nesper, Esq. ¶ 3.) Plaintiff declined on the ground that the Aces' own website still contained references that violated the stipulation. (Reply Von Simson Decl. Ex. A.)

Plaintiff subsequently became aware that Aces was answering the "Magic Mist" telephone lines and appeared to be operating the MagicMistLimo website. (Decl. of Charles Von Simson ¶ 9 Exs. D, G, Docket Nos. 32-2, 32-9; Decl. of Carla Boccio ¶ 3, Docket No. 32-10.)  Upon inquiry, Aces' counsel asserted that "Magic Mist is out of business completely.  My clients are using the assumed name for their business which does not violate the stipulation." (Von Simson Decl. Ex. D (March 5, 2013 Nesper email).) Plaintiff's counsel ultimately responded that adoption of the "d/b/a" could not have been achieved without contact with Leehan, therefore Aces acted in violation of the stipulation. (Id. (March 6, 2013 Von Simson email).)

Aces counsel then stated in a letter dated March 6, 2013:

[Y]our client's concern was that Aces Limousine Service was providing assistance to James Leehan d/b/a Magic Mist Limousine Services. To avoid further litigation, our client agreed not to provide such assistance in the future. When Mr. Leehan ceased business operations, the *raison [d']etre* for the stipulation evaporated.  Our clients decided to use the name of his now defunct entity.  This had nothing to do with 'the promotion or operation of a limousine service' by Mr. Leehan in New York.  As such, there is no basis to claim a breach of the stipulation.

(Von Simson Decl. Ex. E.)

Plaintiff's counsel responded that Aces had "confirmed that [its] principals . . . had business contact with Mr. Leehan regarding the promotion and operation of a limousine service within the State of New York," therefore Plaintiff would move forward with the present motion for contempt. (Id. Ex. F.)

### III. DISCUSSION

Contrary to Aces' suggestion, this Court does have subject matter jurisdiction over the present motion.  (See Nesper Affirm. ¶¶ 10-11.)  The Stipulation between Plaintiff and Aces, which was so-ordered by this Court, expressly states that "[t]his Court will maintain ongoing jurisdiction of any dispute regarding compliance with the terms of this Stipulation of Dismissal with Prejudice." (Docket No. 28 ¶ 3); see Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 381, 114 S. Ct. 1673, 128 L. Ed. 391 (1994) (a court's retention of ancillary jurisdiction for enforcement purposes is a proper condition of a dismissal-producing settlement agreement); Geller v. Branic Int'l Realty Corp., 212 F.3d 734, 737 (2d Cir. 2000) (by so-ordering a stipulation, a court accepts the obligation to enforce the terms thereof).

However, while it is clear that a district court has "not only the power but the duty to enforce a settlement agreement which it ha[s] approved," Meetings & Expositions, Inc. v. Tandy Corp., 490 F.2d 714, 717 (2d Cir. 1974), the Second Circuit has recognized that "there is nothing in the Federal Rules of Civil Procedure styled a 'motion to enforce.' Nor is there approval for such a motion to be found in this Circuit's case law." Martens v. Thomann, 273 F.3d 159, 172 (2d Cir. 2001). Instead, there are:

many ways in which the performance of a . . . settlement [agreement] might

4

be called into question before the district court[, such as] in a contempt proceeding (if the claim is that the district court's orders are not being complied with); in a new action for breach of contract ( if the claim is that one or more parties are not living up to their obligations under the settlement stipulation); or in a motion for relief from judgment under Fed. R. Civ. P. 60(b) (if an amendment of the original judgment is being requested).

Martens, 273 F.3d at 172; see Halstead-Johnson v. Conlon, No. 1:09-cv-87, 2010 WL 1740833, *1-2 (D.Vt. Apr. 28, 2010). Here, Plaintiff requests that this Court permanently enjoin Aces "from using, owning or maintaining any assets currently or formerly owned by Defendant James Leehan" and awarding Plaintiff reasonable attorneys' fees for the present motion. (Docket No. 32.) The parties' arguments will be reviewed accordingly.

## A.     Breach of the Stipulation

There is, of course, no need to consider what relief is appropriate if there was no breach of the Stipulation between the parties. To that end, this Court agrees with Plaintiff that Aces engaged in an inappropriate business contact with Leehan regarding the promotion or operation of a limousine service within the State of New York. In his sur-reply affirmation, Aces' counsel confirms that Aces *purchased* the Magic Mist Limo website from Leehan. (Nesper Affirm. ¶ 8.) This is notably different from counsel's earlier assertions that Aces had only assumed a defunct d/b/a name. (Von Simson Decl. Exs. D, E (attorney emails).) Further, Aces' argument that this was not a "business contact"[1] is nonsensical. (Nesper Affirm. ¶ 5.) By definition, "business" includes "[c]ommercial transactions" such as the sale of a website or other asset. See Black's Law Dictionary 226 (9th ed. 2009).

Further, the fact that Leehan was selling the website because he was no longer

---

[1]Although Aces correctly points out that Plaintiff left out the word "business" in describing the Stipulation's language in its initial papers, this Court finds the omission inadvertent in light of Plaintiff's arguments and the fact that the actual Stipulation was also submitted.

continuing in the limousine business does not remove the transaction from the scope of the Stipulation. (<u>See</u> Nesper Sur-Reply Affirm. ¶¶ 7-8.)  Aces argues that the purpose of the Stipulation was to limit its cooperation with Leehan's operation of his own limousine business, therefore there can be no breach because that business is now defunct. (Aces' Mem of Law in Opp'n at 2-4.)  The actual language of the Stipulation, however, does not limit – as it easily could have – the promotion of a limousine business to Leehan's limousine business.  Therefore the purchase of a website from Leehan to promote Aces' limousine service is also precluded by the Stipulation.  Indeed, the email from Plaintiff's counsel clearly states that he interpreted the Stipulation as precluding the sale, thus undermining Aces' argument that the language was ambiguous. (Von Simson Reply Decl. Ex. A; Nesper Sur-Reply Affirm. ¶ 3.)

## B.     Permanent Injunction

Plaintiff argues that "[t]his Court should enforce the Stipulation by depriving Aces of the benefit of the violation," and that "[t]he only way to deprive Aces of the benefits of its violation of the Stipulation is to enjoin it from any further use of assets currently or formerly held by Mr. Leehan." (Pl's Mem of Law at 7.)  Initially, the only obtained assets clearly defined by the submissions are the Magic Mist Limo name and website.

Plaintiff offers no argument to support the request for a permanent injunction.  To obtain this injunction, Plaintiff must show, among other things, a likelihood of irreparable harm if the injunction is not granted.  <u>Salinger v. Colting</u>, 607 F.3d 68, 79-80 (2d Cir. 2010). No such showing has been attempted here.  Further, although the sale constituted an improper business contact, neither Plaintiff's stipulation with Aces or its stipulation with Leehan precludes the *use* of the Magic Mist name or website.  Indeed, Plaintiff's stipulation

6

of dismissal with Leehan expressly contemplates that the Magic Mist Limo website would permissibly continue to operate. (Docket No. 29 ¶ 3.)  There is also no allegation that Aces is utilizing any of the specified "confusingly similar" Buffalo Limo trademarks.  The request for a permanent injunction is therefore denied.

## C.    Attorneys' Fees

Plaintiff also requests that this Court exercise its inherent authority and award it attorneys' fees for Aces' violation of the Stipulation. This Court does indeed have the inherent authority to assess attorneys' fees when a party shows bad faith by, among other things, hampering the enforcement of a court order. Chambers v. NASCO, Inc., 501 U.S. 32, 46, 111 S. Ct. 2123, 2133, 115 L. Ed. 2d 27 (1991); see generally United States v. Seltzer, 227 F.3d 36, 41-42 (2d Cir. 2000) (an explicit finding of bad faith is required where misconduct is undertaken for a client's benefit).  To impose sanctions under this authority, there must be "clear evidence that (a) the offending party's claims were entirely meritless and (2) the party acted for improper purposes." Revson v. Cinque & Cinque, P.C., 221 F.3d 71, 78-79 (2d Cir. 2000).

Here, there is certainly a colorable argument that Aces' purchase of the website after counsel admitted it would violate the Stipulation was in bad faith.  Indeed, the references of Aces' counsel to the assumption and "use [of] the name of [Leehan's] now defunct entity" disingenuously imply that no sale occurred. (Von Simson Decl. Exs. D, E.) Nonetheless, based on this record, there is no apparent prejudice to Plaintiff from the sale. Further, an argument can also be made that, despite violating the letter of the Stipulation, Aces did not believe it was violating the spirit thereof.  Accordingly, there is not clear evidence that the challenged actions were undertaken for "reasons of harassment or delay

7

or for other improper purposes." <u>Revson</u>, 221 F.3d at 79.  The request for attorneys' fees is denied.  Similarly, however, because there is in fact evidence of a violation, Aces' request that Plaintiff's counsel be sanctioned is likewise denied. (<u>See</u> Aces' Mem of Law in Opp'n at 5.)

## IV. CONCLUSION

Although Plaintiff is correct that Aces' purchase of the Magic Mist Limo website violated the plain language of the Stipulation, neither form of relief requested is appropriate.  The 'motion to enforce' is therefore denied.

## V. ORDERS

IT HEREBY IS ORDERED that the Plaintiff's Motion to Enforce the Terms of the Stipulation of Dismissal (Docket No. 32) is DENIED.

SO ORDERED.

Dated:     October 20, 2013
          Buffalo, New York

<u>/s/William M. Skretny</u>
WILLIAM M. SKRETNY
Chief Judge
United States District Court
